## SECURITIES ALLIED CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.
### No. I–149.

Circuit Court of Appeals, Second Circuit.
March 21, 1938.

For opinion below, see 36 B.T.A. 168.

Mabel Walker Willebrandt, of Washington, D. C., Edwin L. Weisl, of New York City, and C. J. McGuire, of Washington, D. C., for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The petitioner, Securities Allied Corporation, was organized under the laws of Delaware in September, 1929, for the purpose of buying and selling securities, participating in underwriting syndicates, and engaging in other investment activities. Its executive committee met daily to decide what securities to buy or sell; the purchases and sales were made through brokers or through Chatham Phenix Corporation. The petitioner kept its books, and made its income tax returns, on an accrual basis. At the close of each of the taxable periods under consideration, namely, December 31st of 1929 and 1930, its securities were inventoried at cost or market, whichever was lower. The market having fallen, a large loss was charged off on the books against profit and loss for each of the periods. The Board of Tax Appeals, sustaining rulings by the commissioner, held that the taxpayer was an investment trust of the management type, not a dealer in securities, and denied it the use of inventories. This resulted in substantial deficiencies in taxes for each of the taxable periods.

■ The taxpayer contends that it is entitled to use inventories, whether or not it be regarded as a dealer in securities. The argument, as we understand it, runs as follows: From the date of its organization, the taxpayer has regularly employed the accrual method of accounting in keeping its books; therefore, under section 41 of the Revenue Act of 1928, 45 Stat. 805, 26 U.S.C.A. § 41 and note, its income must be computed according to the accrual method, unless this method "does not clearly reflect the income." Expert testimony was introduced to prove that the use of inventories is an essential part of the accrual method of accounting, and that the taxpayer's books do clearly reflect its income during the taxable periods under consideration. The commissioner offered nothing to the contrary; he denied the use of inventories solely because the taxpayer was not a dealer in securities as defined in article 105 of Regulations 74. In construing section 22(c), 45 Stat. 797, 799, 26 U.S.C.A. § 22(c) and note, to permit the Commissioner to say who may and who may not use inventories, the Board has given that section an unwarranted interpretation. Section 22(c) is not a limitation upon a taxpayer's right, conferred by section 41, to elect the accrual method, of which an inventory is an essential part; it merely permits the Commissioner to require inventories and prescribe upon what basis they shall be made, when he finds that the taxpayer's method of accounting will not clearly reflect income without the use of them. Hence the statute does not deny a taxpayer the use of inventories when his method of bookkeeping clearly reflects his income, and the commissioner's attempt to do so by article 105 is an arbitrary classification amounting to legislation, and beyond his regulatory powers.

■ If the question were open for consideration without regard to prior administrative action, the petitioner's argument would have considerable persuasive force. But such is not the case. Section 203 of the Revenue Act of 1918, 40 Stat. 1060, is identical with section 22(c) of the Act of 1928. Under section 203 the Commissioner assumed to determine by regulations who were entitled to use inventories and who were to be regarded as dealers in securities. Reg. 45, arts. 1581, 1585. Whether or not this was the most reasonable interpretation of the statute, it was at least a possible interpretation. In Lucas v. Structural Steel Co., 281 U.S. 264, at page 268, 50 S.Ct. 263, 74 L.Ed. 848, the opinion contains a dictum that "Whether in a particular business inventories are necessary for the determination of income is a practical question left by the statute to the judgment of the Commissioner." Cf. Snyder v. Commissioner, 295 U.S. 134, 141, 55 S.Ct. 737, 740, 79 L.Ed. 1351. The administrative interpretation has received the congressional approval to be inferred from four subsequent re-enactments of the section prior to the taxable years in question. We think it is now too late to question it. In numerous cases in which the taxpayer has claimed the privilege of inventories, the courts have assumed that decision turned on whether or not he was a dealer as defined in the regulations. It will suffice to cite Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101; Helvering v. Fried, 299 U.S. 175, 57 S.Ct. 150, 81 L.Ed. 104; Vaughan v. Commissioner, 2 Cir., 85 F.2d 497.

■ The Board found as a fact that the petitioner was not a dealer in securities. This was clearly right. It had no place of business to which customers could come to buy; it was a customer of brokers, not they of it, as in the case of a specialist. See Schafer v. Helvering, supra; Helvering v. Fried, supra.

■ Nor was the petitioner a dealer with respect to the Empire State debentures, whose issue it joined with others in underwriting in April, 1930. It is true it intended to sell them "to the public directly through houses that had salesmen out reaching the public"; but it made no sales nor offers to sell in 1930. It did not become a dealer merely by acquiring the bonds with an intention to sell them to the public some time in the future when the executive committee should decide the time was ripe.

■ Finally, it is urged that the petitioner was entitled to take a deduction as of a partially worthless debt on account of the drop in market value of the Empire State debentures. Section 23(j) of the Revenue Act of 1928, 45 Stat. 799, 800, 26 U.S.C.A. § 23 note, is relied on. But no evidence was offered that the debtor's affairs were such that payment at maturity of the bonds was unlikely, as required by article 194 of Regulations 74. Indeed, the stipulation repudiated any such inference.

We have found no error in the orders of the Board. They are affirmed.