*688 OPINION;.
Oppek:
We are of the opinion that this case is controlled by O. L. Burnett, 40 B. T. A. 605; affirmed on this issue (C. C. A., 5th Cir.), 118 Fed. (2d) 659. Petitioner’s contrary contentions are susceptible of division into three parts: First, that the Burnett case is wrong and “we think should be overruled by this Board”; second, that the case is distinguishable; and, third, that if the rule there followed is applied to petitioner, it places an unwarrantable construction upon section 117 of the Revenue Act of 1936,[1] from the standpoint of constitutionality.
*689 We think the Burnett case was properly decided and should be followed. And we do not think that it is distinguishable. The differ-. enees in the present facts petitioner asserts to be that here petitioner’s firm was a stock exchange member, and always paid fully for the property bought, and sold the listed stocks by its own firm members to purchasers there, whereas in the Burnett case petitioner bought and sold through brokers and on margin; that here the partnership agreement authorized buying and selling securities for profit as a business; that there was a large business investment and continuing overhead and the devotion to the business of a large amount of time, attention, and experience by firm members; and that petitioner’s firm had over 600 customers, to some of whom it at times sold stocks purchased for its own account.
To the extent that these facts form the basis for petitioner’s contention that the firm was carrying on a trade or business of buying and selling securities for profit on its own account they are persuasive, and we have made a finding of fact to this effect. That, however, does not constitute a distinction from the Burnett case, for similar facts and the same finding may be found there. They do not demonstrate that the Burnett case is inapplicable. The Board there said that, under the corresponding section of the 1934 Act, “any property is a ‘capital asset’ unless it may properly be included in an inventory or is held for sale to customers.” If petitioner was a trader and not a 'dealer, it was not entitled to use inventories. O. L. Burnett, supra. The mere fact that it was a stock exchange firm and had customers as a broker neither entitled it to do that nor to claim that securities traded in for its own account were intended for sale to customers. In Vaughan v. Commissioner, 85 Fed. (2d) 497, 499; certiorari denied, 299 U. S. 606, the Second Circuit Court of Appeals came to the conclusion that the stock brokerage firm there involved was to be considered a dealer with respect to stocks in which they were “specialists”, adding:
* * ⅜ But we can not see that they were “dealers” within the meaning of the regulations in the other securities, which were held and traded in in relatively small quantities and had no necessary connection with their business except for speculation. We do not think it possible that they purchased or carried such stocks as a supply for customers.
To the same effect is Schafer v. Helvering, 299 U. S. 171. There is no claim here that petitioners were specialists or that for any other *690 reason the stocks bought for their own account were “a purchase to create a stock of securities to take care of future buying orders in excess of selling orders.” Schafer v. Helvering, supra. We think, therefore, that there is no ground for the assertion that the present facts distinguish this proceeding from O. L. Burnett, supra.
On the constitutional point, petitioners contend, in effect, first that the respondent’s position prevents them from deducting the cost of goods sold in arriving at their gross income, and, second, that the emphasis placed upon sales to customers creates a “whimsical”, arbitrary and unreasonable classification. The first contention was disposed of unfavorably to petitioner’s position in Edward J. White, 37 B. T. A. 1106, dealing with the provisions of section 23 (r) of the Revenue Act of 1932. As to the second, we can not be unmindful that we are dealing here with a matter of deductions which “may be allowed or not in the sound discretion of Congress; the only restriction being that it does not act arbitrarily so as to set up in effect a classification for taxation so unreasonable as to be a violation of the fifth amendment.” Davis v. United States (C. C. A., 2d Cir.), 87 Fed. (2d) 323, 325; certiorari denied, 301 U. S. 704.
We think it apparent that, in describing the excepted class by reference to the term “customers”, Congress was characterizing not the vendee but the type of business. This was entirely in accordance with precedent. As has been suggested, the use of inventories was restricted by regulation and decision to dealers, who in turn were to be distinguished from traders by reference to whether their sales were made to customers in the ordinary course of their business. That Congress had this analogy in mind in enacting 117 (b) is evident from the reference to inventories in the same sentence. Again, in the 1928 Act (sec. 118), the “wash sales” provision is declared not to be aimed at a corporation which is “a dealer in stocks or securities, and with respect to a transaction made in the ordinary course of its business.” This required a definition of dealer, which, as accepted, contained reference to “resale to customers.” Donander Co., 29 B. T. A. 312, 314. In the 1932 Act there was a limitation upon losses from sales or exchanges of stocks and bonds even though not capital assets as there defined, meaning those held for two years or more, which, however, was inapplicable “to a dealer in securities (as to stocks and bonds acquired for resale to customers) in respect of transactions in the ordinary course of his business.” Sec. 23 (r).
In 1934, as petitioner points out, the change consisted of a “slightly revised” treatment. Capital assets were defined to include property even though connected with a trade or business, and without regard to any holding period, and the reference.to “customers” was moved from section 23: (r) to section 117 (b). The effect, however, seems *691 to us to have been, first, to create a classification intended, as theretofore, to apply only to a dealer in securities, “i. e., a merchant of securities * * * with an established place of business regularly engaged in the purchase of securities at wholesale and their resale to customers”;[2] and, second, to make it clear that the classification separating a dealer, on the one hand, from a trader, on the other, is not only sanctioned by repeated precedent, but based upon a real distinction between such a merchant and “traders or other taxpayers who buy and sell securities for investment or speculation, whether or not on their own account, and irrespective of whether such buying and selling constitutes the carrying on of a trade or business.” [3] We do not think it possible to say that such a classification is whimsical or arbitrary.

Decision 'will he entered for the respondent.

 SEC. 117. CAPITAL GAINS AND LOSSES.
*******
(b) Definition of Capital Assets.—For the purposes of this title, “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.
* * * * * * *
(d) Limitation on Capital Losses.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. If a bank or trust company incorporated under the laws of the united States or of any *689 State or Territory, a substantial part of whose business is the receipt of deposits, sells any bond, debenture, note or certificate or other evidence of indebtedness issued by any corporation (including one issued by a government or political subdivision thereof), with interest coupons or in registered form, any loss resulting from such sale (except such portion of the loss as does not exceed the amount, if any, by which the adjusted basis of such instrument exceeds the par or face value thereof) shall not be subject to the foregoing limitation and shall not be included in determining the applicability of such limitation to other losses.

 H. R. 708, 72d Cong., 1st sess., p. 18, referring to Revenue Act of 1932, section '23 (r).

 Ilid.