# STATE v. RALPH C. HITCHCOCK.[1]

April 29, 1949.

No. 34,874.

R. H. Fryberger, for appellant.

J. A. A. Burnquist, Attorney General, David W. Lewis, Assistant Attorney General, and Joseph S. Abdnor, Special Assistant Attorney General, for the State.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment in favor of the state against a taxpayer for $11,511.07 plus costs, as additional income tax and penalty for the year 1942.

The complaint alleges that the taxpayer filed a return of income for 1942 and that the commissioner of taxation, after auditing that return, found and determined that the taxpayer was indebted to the state for an added income tax for 1942 in the amount of $9,635.03. The commissioner duly assessed the tax in the amount, which the taxpayer failed to pay when due. Suit was brought and penalty demanded.

[1]Reported in 37 N. W. (2d) 378.

In his answer, the taxpayer defendant admitted the assessment of additional income tax and that he had not paid it. He alleged that he had made a bona fide gift of a one-seventh interest in the real and personal property of his foundry business to each of his six children then living; that he had established a limited partnership with these children, two of whom were general partners and the other four limited partners only; and that as to the minor children the probate court authorized him, as their guardian, to transfer personal property from such minors to the partnership and empowered him to execute the papers making them members of the limited partnership. The reply alleged that the four younger children had contributed neither services nor capital to the alleged partnership and that they did not share in the management and control of the business from which the earnings flowed. The reply alleged that the partnership arrangement was a mere paper allocation of defendant's business income within the family group and that the entire income of the business, allocated to the four minor children, was in fact that of defendant.

At the trial, the issue was the validity of the partnership arrangement for tax purposes and whether the assessment made against defendant on the ground that the income distributed to the four younger children was in fact his.

The burden of proving the invalidity of the assessment fell on defendant, because the demand for additional tax had not been paid. M. S. A. 290.47. The facts are not in dispute, except as to the inferences to be drawn therefrom as to the validity of the limited partnership for tax purposes and the assessment of an additional tax.

From 1916 until July 1941, taxpayer was the sole owner and operator of a pattern and foundry business in Minneapolis known as the Modern Pattern Company. He had six children. Harold M. and Carleton C., both of age as of June 2, 1941, were employed in the operation and management of the business. There were four other children: Claude R., a medical student at the University of Minnesota, aged 23; Margaret Ann, a minor of 20 years; Ralph C. Jr., a minor of 14 years; and Lucy U., a minor of 10 years. All but

Harold and Carleton lived with defendant in his Minneapolis home and were dependent upon him for their maintenance, education, and support.

Defendant's foundry was engaged in the production of castings required in the manufacture of military equipment, including magnesium and heat-treated aluminum castings. An expansion program was initiated in 1939 and 1940 and military subcontracts were obtained. The two oldest sons sought an interest in the business during that time. They originally demanded a part ownership in the business in addition to their salaries as employes. Defendant acceded to their request, but asserts that he desired to treat all of his children alike, and, to that end, he desired to give an equal interest in the business to each. June 2, 1941, after consulting business associates and his attorney, he executed a warranty deed to convey by gift to each of his six children an undivided one-seventh interest in the real property occupied by the business. At the same time, he executed a bill of sale, which, on its face, purported to give to each of his children an undivided one-seventh interest in all personal property used in connection with the business. A gift tax was paid to both the federal and state governments. On the same date, taxpayer petitioned for and obtained from the probate court of Hennepin county his appointment as guardian of the persons and estates of his then minor children, Margaret Ann, Ralph C. Jr., and Lucy U. Under that order, defendant was authorized to accept and retain, as an investment of the funds of the minors, the property received as a gift by each of them from defendant. As guardian, he was authorized to transfer the property given to the minors to the partnership, to be organized and known as R. C. Hitchcock & Sons, and to convert it into interests therein for each of said minors as limited partners, as the contribution of each to the capital thereof. As guardian, he was authorized to execute the articles of limited partnership in behalf of the minors and in all respects to fully bind such minors and the property each contributed thereto. As guardian, he was authorized to execute and deliver a lease of

their real property to the partnership for a period of one year and from year to year thereafter for a nominal consideration.

On that same date, defendant and his six children executed the articles of partnership whereby defendant and his two older sons, Harold and Carleton, became general partners as well as limited partners. The articles purported to constitute the four younger children limited partners to the extent of a one-seventh interest in the business, the articles being signed by defendant as guardian for the minors. There was a provision in the partnership articles that the profits be divided one-seventh to each member, subject to the right to fix and pay salaries to the general partners for the management and conduct of the business. There was also a provision that no limited partner might assign his interest except by the consent of all partners.

By a bill of sale, also dated June 2, 1941, taxpayer and his six children (the minors by their guardian, the defendant) transferred to the partnership their respective interests in the personal property connected with the business and executed a lease of the real estate to the partnership for a nominal annual rental of one dollar, the partnership to pay taxes, cost of upkeep, and maintenance. The record shows that except as to these transfers there was no contribution of capital to the partnership by any of defendant's children. After organization of the limited partnership, the business was managed by the three general partners. Defendant continued to perform certain types of management and control functions, dealing especially with the office, matters of credit, and maintenance of customer contacts. Carleton participated actively in management by handling personnel matters, procurement and supervision of the performance of customers' orders, and procurement of new and additional business. Harold supervised the maintenance and construction of plant structures and equipment, with Carleton designing certain new machinery necessary to meet the demands of the new business. The evidence tended to prove that the two oldest sons ran the business and procured the expansion which subsequently took place during the war years.

None of the other children performed any services, nor were they directly connected with the business. Margaret Ann came of age in January 1942. Defendant duly petitioned for discharge as her guardian, filed a final account, and was discharged. Claude was at this time a medical student at the University of Minnesota and had no connection with the business. Ralph, Jr., and Lucy were too young to participate in the affairs of the partnership, being aged 15 and 11 years respectively as of the taxable year 1942. December 31, 1942, appropriate credits in the capital account of the partnership were given to each donee as earnings, which were used in the operation of the purported partnership as capital. Income taxes were paid thereon.

However, upon the trial the court found:

## "VII.

"That the purported gifts by defendant to his six children were not absolute and complete but were made solely on the condition that the business should continue, should remain intact, should continue to operate as it had in the past, that the interest passed by the purported gifts to each of the children should be and remain as part of the business to be continued, supervised and directed by defendant in conjunction with the two oldest children. That defendant's children, Claude R. Hitchcock, Margaret Ann Hitchcock, Ralph C. Hitchcock, Jr., and Lucy Utter Hitchcock, did not gain full dominion and control over their respective one-seventh shares by virtue of such purported gifts, but that the real control thereof was in the defendant and his two oldest children, Harold and Carleton."

As conclusions of law, the court held that the transfers by defendant to the four younger children were conditional, incomplete, and ineffective for income tax purposes to divest defendant of title, dominion, and control of the subject of the gift, and that such title, dominion, and control remained in him. The court concluded that no real and valid partnership was created by the execution of the articles of partnership as to the four younger children and that

defendant was liable for payment of a tax upon five-sevenths of the net earnings of the business in the sum of $91,068.80. Judgment was entered accordingly. This appeal followed.

In his assignments of error, defendant challenges the above-quoted finding as not sustained by the evidence and the conclusions of law as not sustained by the findings, if the finding quoted be eliminated.

Is the challenged finding of fact sustained by the evidence? Prior to June 1941, defendant was fully aware of the lesser tax resulting from the division of income, and on the trial he conceded that this was a consideration entering into the formation of the partnership. Circumstances which tend to support the finding are very convincing. The application to the probate court for authority relative to control of the gifts to the minors reads in part as follows:

"7. That said gifts were made by your petitioner solely *on condition* that the business shall continue, shall remain intact, and continue to operate as it has in the past, and that the interest received therein by each of his said children shall be and remain as part of said business, and that your petitioner proposes to continue to supervise and direct said business in conjunction with his two oldest children.

\* \* \* \* \*

"10. That the consummation of said gifts and the carrying out of said plan and program to continue said business *is conditioned* on the court duly making and entering its order in the premises authorizing your petitioner as said guardian to retain said property as an investment of the funds of said minors, and to execute such papers and documents as may be necessary to effectuate the purposes aforesaid.

"11. That your petitioner considers that said gifts are *conditioned solely* by virtue of the premises and are made upon conditions that the program and procedure will be carried out as hereinbefore set forth." (Italics supplied.)

Defendant testified that the provisions of the above application truly reflected petitioner's intentions, and that his intention as to the gifts to the minors, as shown by the petition, was the same as to all four of the younger children.

All documents relative to the entire transaction were dated the same day, June 2, 1941. The original articles of partnership provided:

"IX.

"The share of the profits and other compensation by way of income which each Limited Partner shall receive by reason of his or her contribution shall be equal to one-seventh of all of the net earnings of said Limited Partnership, payable to them, and each of them, from time to time, as determined by the General Partners, provided however, that a reasonable wage or salary may be paid to and deducted by the said General Partners for the management and conduct of the business of said Limited Partnership as deductible item or items in ascertaining the net earnings of said Limited Partnership as the same is herein to be construed.

"X.

"No Limited Partner shall have a right to substitute an assignee as contributor in his place except upon the unanimous consent of all the Limited Partners in writing and filed with the General Partners."

Nevertheless, in 1944, paragraph IX was amended to increase the share of the net profits of defendant and his two older sons as limited partners to one-fourth each and to reduce the share of the four other limited partners to one-sixteenth each. Under the circumstances, we think that this subsequent action throws light on the original transaction. Under the terms of the articles, the four younger children as limited partners could not substitute an assignee without permission of all the partners. They could not withdraw any contribution of assets (the subject of alleged gifts) until termination of the partnership. Even upon termination of the partnership, the limited partners could not receive distribution of assets in kind except at the discretion of the general partners.

Distribution of partnership income was made to the four younger children only at the time determined by the general partners (defendant and his two older sons), after determining and paying to themselves as general partners a salary for their own services.

Family partnerships have been scrutinized by the courts with great care. If by that device the only thing accomplished is to divide the income so as to reduce the surtax, the case requires a high degree of careful examination into the reality of what purports to be a partnership and whether the donor in fact parted with control of the shares of the partnership business which, on the face of the transaction, he transferred to other members of his family. Here, there is not only failure to part unconditionally with the interests in the business, but most convincing proof, by way of defendant's own words and actions, that he retained complete dominion and control over what, on the face of the papers, he pretended to part with. So far as the four younger children were concerned, there was no reality to the partnership. By the terms of the partnership articles, they might not transfer their interests without defendant's consent.[2] They were bound to take as income therefrom whatever he and the other general partners determined. He took from them whatever he determined he should have for their support. He ceased to support the minors from his own funds. He and his older sons, at their own arbitrary decision, later enlarged their three shares in the partnership to three-fourths and reduced the shares of the others to one-sixteenth each. The one substantial advantage achieved by the purported partnership, if valid, was to reduce the income tax that must be paid. No other change was accomplished. The business went on as before; so did the family life; so did defendant's control continue, not only of the business, but of the four younger children's purported interest therein. Apparently, their interests could be reduced or eliminated at will by defendant; they were reduced in 1944. Such being the case, there is little room for challenge to the finding that the organization of the partnership insofar as the four younger children were con-

---

[2] But see M. S. A. 322.19.

cerned was a mere pretense for the purpose of evading taxes. The rule in regard to circumstantial evidence in civil cases does not require more convincing proof than we have before us here. Sherman v. Minnesota Mut. L. Ins. Co. 191 Minn. 607, 255 N. W. 113. The evidence in support of the finding certainly outweighs any other hypothesis.

Though opinions of the federal courts support the result in the trial court,[3] our conclusion would be the same were there no such decisions. There must be a partnership in reality and not a mere pretense of one to entitle the partners to divide the income tax burden according to their respective interests as they appear on the face of the articles of partnership.[4] It may be of interest that the

[3]Cf. Commr. Int. Rev. v. Tower, 327 U. S. 280, 66 S. Ct. 532, 90 L. ed. 670; Lusthaus v. Commr. Int. Rev. 327 U. S. 293, 66 S. Ct. 539, 90 L. ed. 679; Lorenz v. Commr. Int. Rev. 3 T. C. 746, affirmed, 148 F. (2d) 527 (6 Cir.) (1945); Munter v. Commr. Int. Rev. 5 T. C. 39, dismissed (CCA 3) June 23, 1947; Lowry v. Commr. Int. Rev. (6 Cir.) (1946) 154 F. (2d) 448; Thorrez v. Commr. Int. Rev. (6 Cir.) (1946) 155 F. (2d) 791; De Korse v. Commr. Int. Rev. (6 Cir.) (1946) 158 F. (2d) 801, affirming 5 T. C. 94; Belcher v. Commr. Int. Rev. (5 Cir.) (1947) 162 F. (2d) 974; Dawson v. Commr. Int. Rev. (6 Cir.) (1947) 163 F. (2d) 664. See, Paul, *Partnerships in Tax Avoidance* (1945) 13 George Washington L. Rev. 121, 123-124, 142-143; Paul, *Restatement of Law of Tax Avoidance* in Studies in Federal Taxation (1st series) (1937) 19, 20, 22, 60, 126-130.

In Scherer v. Commr. Int. Rev. 3 T. C. 776 (1944), the Tax Court found a valid partnership, and the gifts were completed through a trust.

See, Commr. Int. Rev. v. Culbertson (1949) 17 L. W. 4681, 4684, 337 U. S. 733, 69 S. Ct. 1210, 1214, 93 L. ed. (Adv. Sheets) 1331, 1336-1337.

[4]*Compare* Minn. St. 1941, 290.01, subd. 20, and 290.31, *with* Internal Revenue Code, 26 USCA, §§ 22(a) [53 Stat. 9] and 181, 182 [53 Stat. 69, as amended by 56 Stat. 845], dealing with gross income and distributive share of partnership respectively.

We have not overlooked the fact that Minn. St. 1941, 290.01, subd. 4, included limited partnerships in the same definition as "corporations." See, also, Minnesota Income and Franchise Tax Act and Regulations, 1941, Arts. 1-3, 1-5. But L. 1943, c. 656, § 1, redefined the term "corporation" substantially as it reads now, and L. 1943, c. 656, § 31, provided that the definition in § 1 of that act *"shall apply to taxable years ending in 1939 and subsequent years;"*. Since the taxpayer has not challenged retrospective

Tax Court has reached the same result as we have.[5]

Judgment affirmed.

---

application of this amendment and made no assignment of error relating thereto, he concedes the similarity of the federal and Minnesota income tax statutes as they relate to this case. M. S. A. 290.47. See, Drew v. Commr. of Taxation, 222 Minn. 186, 23 N. W. (2d) 565; State v. Stickney, 213 Minn. 89, 91, 5 N. W. (2d) 351, 352.

[5]Hitchcock v. Commr. Int. Rev. 12 T. C. ———, Docket Nos. 13617-13623 (decided January 24, 1949), P.-H. Federal Tax Service, § 74,228, § 12.5, P.-H. TC 1949.